# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIAN HENDERSON and EUGENE HOFFMAN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CITY OF CHICAGO, et al., | ) ) |
| Defendants. | ) ) |

No. 14-cv-09905

Judge Andrea R. Wood

## MEMORANDUM OPINION AND ORDER

Plaintiff Brian Henderson claims that after an incident with his landlord, the landlord's son, who is a Chicago police officer, conspired with his father and other police officers to have Henderson arrested and prosecuted on false charges. Plaintiff Eugene Hoffman, another Chicago police officer, claims that his employer retaliated against him for failing to go along with the conspiracy. Together, Plaintiffs have brought this action against Defendants Charles Six Jr., Joseph McCarthy, Richard Scott, and the City of Chicago ("City") based on the purported false arrest and malicious prosecution of Henderson and the unlawful deprivation of Hoffman's property and liberty interests in his employment as a police officer. Now before the Court is Defendants' motion for summary judgment. (Dkt. No. 101.) For the reasons discussed below, the motion is granted.

## BACKGROUND

For purposes of the instant summary judgment motion, this Court draws all reasonable inferences from the evidence in Plaintiffs' favor. *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018), reh'g denied (Oct. 30, 2018).

This case stems from a dispute between a landlord and tenant on December 17, 2012 in Chicago, Illinois. Henderson was staying at an apartment with his girlfriend, Tamika Humes,[1] when her landlord, Charles Six Sr., arrived at the unit. (Defs.' Joint Statement of Material Facts ("DSOMF"), Case Suppl. Report, Ex. O, Dkt. No. 102.) The parties disagree about what happened next. Defendants claim that Six Sr. and Christopher Schreck, a plumber, came to the apartment to fix a leaky sink. (DSOMF, Ex. E, McCarthy Aff. ¶ 5.) They contend that when Six Sr. attempted to enter the unit, Henderson shouted obscenities and pushed Six Sr., causing injuries to his shoulder, hands, and lip. (*Id*.) Plaintiffs' version of the incident differs significantly. They contend that Henderson never touched Six Sr. Instead, Six Sr. and Schreck entered the apartment without permission as Humes was getting out of the shower, with Six Sr. leaving only reluctantly when Henderson found him and Schreck and asked them to leave. (Second Am. Compl. ¶¶ 13–15, Dkt. No. 98.)[2]

Whichever version of the incident is correct, it is undisputed that Six Sr. subsequently called the police to lodge a battery complaint against Henderson. Chicago Police Officers

---

[1] The parties variously refer to this individual as Tamika Humes or Tamika Hughes. Since the police documents in the record refer to "Tamika Humes," the Court will adopt that spelling of her name. (Defs.' Joint Statement of Material Facts ("DSOMF"), Ex. O, Case Suppl. Report, Dkt. No. 102.)

[2] The only version of the incident between Henderson and Six Sr. provided by Plaintiffs is found in Hoffman's affidavit in opposition to summary judgment. (Pls.' SOAMF, Ex. 2, Hoffman Aff., Dkt. No. 113-2.) However, Hoffman's account describes the incident as relayed to him by Henderson and Humes. In deciding a motion for summary judgment, the Court must consider only evidence that would be admissible at trial. *Gustovich v. AT & T Commc'n, Inc.*, 972 F.2d 845, 849 (7th Cir. 1992); *see also* Fed. R. Civ. P. 56(e). Hearsay, or a prior statement offered in evidence to prove the truth of the matter asserted, is generally inadmissible. Fed. R. Evid. 801(c). Hoffman was not present at the initial encounter, yet Plaintiffs appear to be offering the version of the incident in his affidavit as proof of how the initial encounter actually took place. That is not permissible. *See Winskunas v. Bimbaum*, 23 F.3d 1264, 1267–68 (7th Cir. 1994) (affirming summary judgment where plaintiff relied on inadmissible hearsay to oppose it). The Court therefore declines to consider those statements in Hoffman's affidavit that are derived entirely from Humes and Henderson's hearsay account of the incident to the extent such statements are offered to support the truth of that account.

Hoffman and Sue Heneghan were dispatched to investigate the claim. (DSOMF ¶ 8.) Hoffman claims that he and Heneghan first met with Six Sr., who told them that a tenant had attacked him and also immediately offered that his son was a Chicago police officer. (Pls.' Statement of Additional Material Facts ("PSOAMF"), Ex. 2, Hoffman Aff. ¶ 10, Dkt No. 113.)[3] When Hoffman and Heneghan questioned him about the event, Six Sr. repeatedly changed stories about how his injury occurred—first asserting that he entered the apartment out of concern for Humes's safety, and then contending that he and Schreck entered to fix the sink, before finally stating that he never entered the apartment and that Henderson had charged out and pushed Six Sr. down the stairs. (*Id*. ¶¶ 16–22, 38.) Hoffman did not see any sign of injury on Six Sr. (*Id*. ¶ 13.) Hoffman and Heneghan then went to Humes's apartment to hear Henderson and Humes's version of the encounter, which was that Six Sr. and someone unknown to them had entered the apartment uninvited and that Henderson asked them to leave. (*Id*. ¶¶ 27–28.) Hoffman and Heneghan then spoke to Six Sr. again. They told Six Sr. they did not believe he was attacked and would not be arresting Henderson because they did not have probable cause to arrest him for battery. (*Id*. ¶ 42.) Hoffman contends Six Sr. never asked him or Heneghan to prepare a police report. (*Id*. ¶ 43.)

After the police visit, Six Sr. contacted his son, Defendant Charles Six Jr., a Chicago police officer. (DSOMF ¶ 3.) It is undisputed that Six Sr. told Six Jr. that Henderson had attacked

---

[3] Hoffman's affidavit is not sworn and does not comply with the requirements for an unsworn declaration under 28 U.S.C. § 1746. Indeed, Hoffman's affidavit references Section 1-109 of the Illinois Code of Civil Procedure, rather than the laws of the United States of America, as the basis for its submission in this case. While that certification might be sufficient in Illinois state court, it does not meet the requirements of § 1746 for use in federal court. *See Boecherer v. Burling Bank*, 2009 WL 4544695, at *4 (N.D. Ill. Dec. 1, 2009) (explaining that where an affiant submits an affidavit in federal court, the penalty of perjury under Section 1-109 of the Illinois Code of Civil Procedure would not apply, and thus an affidavit sworn pursuant to Illinois code does not meet the requirements of § 1746). In addition, the affidavit is not dated, which is an express requirement of § 1746. Although the Court could strike the affidavit as procedurally improper, the Court declines to do so given that it appears Hoffman could readily resubmit his testimony in an acceptable format and, in any case, the contents are not sufficient to prevent summary judgment in Defendants' favor.

him by slamming Six Sr. with a door and attempting to push him over the railing and down the stairs, causing him injuries. (DSOMF ¶¶ 4–6.) It is also undisputed that Six Jr. observed blood on Six Sr.'s lip and bruising on the back of his hands. (DSOMF ¶ 9.) After Six Sr. told his son he wanted to file a police report, Six Jr. drove his father to the nearest police station. (*Id*. ¶ 10; Ex. A, Six Jr. Dep., 19:10–11.) There, Six Sr. also filed a complaint against the responding officers for refusing to prepare a police report or arrest Henderson in response to Six Sr.'s initial police call. (*Id*. ¶ 36.) At some point, Otten witnessed Six Sr. sign a felony criminal complaint against Henderson. (*Id*. ¶ 22.)[4] After receiving Six Sr.'s complaint, Officers Kenneth Kamien and Kimberly Otten arrested Henderson at the apartment and brought him to a police station. (*Id*. ¶¶ 10–17.)

Defendant Joseph McCarthy, a detective with the Chicago Police Department assigned to investigate aggravated batteries, received the assignment to investigate the alleged battery against Six Sr. (*Id*. ¶¶ 23–24.) McCarthy spoke to Kamien and Otten to get their understanding of the case. (*Id*. ¶ 27.) He also spoke to Six Sr. and Schreck, who said Henderson had shoved Six Sr., as well as Henderson and Humes, who denied such an altercation took place. (*Id*. ¶¶ 25, 28–29; Ex. E, McCarthy Aff., ¶¶ 5, 7–8.) Photographs were taken of the alleged injuries on Six's Sr.'s shoulder, hands, and lip. (DSOMF ¶ 26.) Six Jr. spoke to McCarthy but did not direct that criminal charges be filed against Henderson. (*Id*. ¶ 30.) McCarthy relayed the information he had received to the Assistant State Attorney's Office ("ASA"), which interviewed all the witnesses and approved felony charges against Henderson. (*Id*. ¶¶ 31–32.) For felony charges to be approved, they generally needed to be called in by a detective. (PSOAMF, Ex. 4, McCarthy Dep., 19:16–18.) A Cook County Circuit Court Judge found probable cause to detain Henderson on

---

[4] The record is somewhat unclear as to when exactly during Six Sr.'s visit to the station he signed the criminal complaint.

December 19, 2012. (DSOMF ¶ 54.) Henderson was ultimately found not guilty of aggravated battery during a criminal court proceeding on March 25, 2014. (*Id.* ¶ 55.)

At some point after Henderson's arrest, Hoffman asserts that his lieutenant commander, Defendant Richard Scott, asked Hoffman how he could believe Henderson's account over that of a police officer's father. (PSOAMF ¶ 22.) A few days after the arrest, Scott split up Hoffman and Heneghan and took them both off their current patrol beat. (DSOMF, Ex. J, Scott Dep., 13:12–20.) On February 8, 2013, Hoffman received notification of Six Sr.'s complaint that Hoffman and Heneghan refused to provide Six Sr. a police report or arrest Henderson. (DSOMF ¶ 38, Ex. K, Def. City of Chicago's First Requests for Admission, ¶¶ 4–5.) Hoffman disputed the allegations and requested a disciplinary screening investigation. (DSOMF ¶¶ 41–43.) That investigation recommended Hoffman receive a 3-day suspension, to which Hoffman objected. (DSOMF ¶¶ 44–45.) After the Chicago Police Board failed to overturn that recommendation, Hoffman received the unpaid suspension. (DSOMF ¶ 46; PSOAMF ¶ 25.) Scott was not involved in the disciplinary screening proceedings that resulted in Hoffman's suspension. (DSOMF ¶ 48.) As of October 12, 2017, Hoffman was still employed as a Chicago police officer. (DSOMF ¶ 62.)

On December 10, 2014, Plaintiffs filed this lawsuit against Defendants. Plaintiffs' Second Amended Complaint asserts false arrest claims against Defendants Six Jr. and McCarthy for Henderson's arrest (Count I), a due process claim against Defendant Scott for depriving Hoffman of liberty and property interests in his employment (Count II), an indemnification claim against the City (Count III), a conspiracy claim against all Defendants (Count IV), and a malicious prosecution claim against the Officer Defendants (Count V).[5] Now pending before the Court is Defendants' motion for summary judgment on all counts. (Dkt. No. 101.)

---

[5] These are the only claims remaining in the case. The Court dismissed various other claims and Defendants on September 30, 2016. (Minute Entry, Dkt. No. 60; Mem. Op., Dkt. No. 64.)

# DISCUSSION

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court may grant summary judgment on "each claim or defense—or [on] part of each claim or defense." *Id*. In evaluating a summary judgment motion, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (internal citation and quotation marks omitted). "The moving party is 'entitled to a judgment as a matter of law' [where] the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## I. False Arrest

Henderson first contends that Defendants Six Jr. and McCarthy caused him to be arrested for aggravated battery despite not having probable cause to arrest him. A false arrest claim contends that a plaintiff was arrested without probable cause in violation of the Fourth Amendment. *Brooks v. City of Chicago*, 564 Ff.3d 830, 832 (7th Cir. 2009). For an individual to be liable in a § 1983 action, he must have caused or participated in the alleged constitutional deprivation. *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998). Thus, to be liable for a false arrest, an individual must either have made the arrest or caused it to happen. *See Acevedo v. Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006).

It is well-established that "[a] finding of probable cause absolutely bars a claim for false arrest under § 1983." *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007). While probable cause does not require evidence sufficient to support a conviction, it does demand more than a bare suspicion of criminal activity. *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 679 (7th Cir. 2007). Courts assess probable cause objectively by looking at the conclusions that the arresting officer "reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Id*. Moreover, probable cause is determined at the time of the arrest. *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) ("A police officer has probable cause to arrest a person if, at the time of the arrest, the facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.") (internal citations omitted). Simply put, if there was probable cause to arrest Henderson at the time of the arrest, then he is barred from proceeding on his false arrest claim. *See Morfin v. City of E. Chicago*, 349 F.3d 989, 997 (7th Cir. 2003).

Henderson asserts false arrest claims against McCarthy and Six Jr. Specifically, he contends that Six Jr. conspired with Six Sr. to falsely claim that Henderson assaulted Six Sr., and that Six Jr. and McCarthy caused Henderson to be arrested despite knowing no probable cause existed for his arrest. Henderson does not dispute that neither McCarthy nor Six Jr. was present at Henderson's arrest. (DSOMF ¶¶ 18–19.)

With respect to McCarthy, Henderson contends that the detective, despite knowing that Hoffman and Heneghan found no probable cause to arrest Henderson, conducted his own investigation and recommended to the ASA that the felony charge of battery be brought against Henderson. (Pl.'s Opp'n to Defs.' Mot. for Summ. J at 2–3, Dkt. No. 114.) While McCarthy

disputes this interpretation of the evidence, the Court notes that he testified that he conducted the post-arrest investigation of Six Sr.'s claim and relayed the information obtained to the ASA. (DSOMF ¶¶ 31–32.; PSOAMF, Ex. 4, McCarthy Dep., 19:16–18; 25:21–28:8.) Since McCarthy acknowledges that felony charges generally require a detective's go-ahead for the ASA to approve them, the Court can reasonably infer that McCarthy endorsed the charging of Henderson for aggravated battery. That said, helping charge Henderson with a crime is not the same as helping arrest him for one. Henderson points to no evidence suggesting that McCarthy was aware of the situation with Henderson and Six Sr. until *after* Officers Kamien and Otten arrested Henderson. (DSOMF ¶ 24.) Even if McCarthy advised the ASA to charge Henderson after a phony investigation, as Henderson contends, McCarthy cannot be liable for Henderson's initial detention. *See Acevedo*, 457 F.3d at 723. The Court therefore grants summary judgment to McCarthy with respect to the false arrest claim.

Six Jr. also contends he was not personally involved in Henderson's arrest. He argues that he merely accompanied his father to the police station and informed an officer there that he was a fellow police officer. Henderson, however, claims that Six Jr. actually conspired with Six Sr. to fabricate a story about Henderson assaulting Six Sr., and then used Six Jr.'s position as an officer as leverage to ensure the officers receiving the report took action against Henderson. Six Jr. admits that he told officers he was an off-duty police officer. (DSOMF ¶ 12.) But he contends he did so as a professional courtesy. In drawing all reasonable inferences in favor of Henderson, the Court finds that a reasonable jury could conclude that Six Jr. identified himself as a police officer to curry favor with or otherwise influence the would-be arresting officers.

The problem for Henderson, however, is that he presents no evidence to suggest that Six Jr. told his father to make a false police report or assisted him in fabricating a lie about Henderson

assaulting Six Sr. Even if the Court assumes that Six Sr. made a false report to get Henderson arrested, Plaintiffs have provided no evidence from which a jury could infer that Six Jr. knew his father was lying. To the contrary, Plaintiffs' own response memorandum suggests that Six Sr. called his son and told him that Henderson assaulted him. (Pl. Opp'n at 2.) And in their response to Defendants' statement of material facts, Plaintiffs admit that Six Sr. told Six Jr. that he had been attacked by Henderson and that Henderson had slammed Six Sr. with a door and attempted to push him over the railing and down the stairs. (Pls.' Resp. to Defs.' Statement of Material Facts ("PRSOMF") ¶¶ 3–6, Dkt. No. 115.) Moreover, Plaintiffs further admit that Six Sr. told Six Jr. that he was injured in the altercation and that Six Jr. actually saw blood and bruising on his father. (*Id.* ¶ 9.) Finally, Plaintiffs admit that Six Jr. told the officers at the station that he was an off-duty police officer "as a courtesy because he had a firearm on his person." (*Id.* ¶ 12.) The only reasonable inference from this series of events is that if Six Sr. lied to the investigating police officers about what happened with Henderson, he also lied to his son, Six Jr.

If Six Jr. did not assist Six Sr. in concocting a lie about Henderson, then the extent of Six Jr.'s involvement is that he drove his father to the police station and informed the other officers that he was also a police officer. That is not enough to suggest that Six Jr. caused Henderson's arrest to happen. *See Maltby v. Winston*, 36 F.3d 548, 559 (7th Cir. 1994) (no personal involvement found where officer knew nothing of an alleged constitutional deprivation). While the Court will draw all reasonable inferences in Henderson's favor, he must produce ***some*** evidence other than his own unsupported allegations that Six Jr. conspired with his father. To create a genuine issue of material fact needed to survive summary judgment, Henderson must dispute Six Jr.'s evidence such that a reasonable jury could find that he personally participated in Henderson's arrest. *See, e.g., Stokes v. Bd. of Educ. of Chicago*, 599 F.3d 617, 619, 622 (7th Cir.

9

2010). Since he has not done so, the Court grants summary judgment in favor of Six Jr. with respect to the false arrest claim.

Even if Henderson had produced sufficient evidence suggesting that Six Jr. was personally involved in his arrest, no reasonable jury would be able to find a lack of probable cause for Henderson's arrest. Whether Six Jr. intended to pressure officers at the police station into arresting Henderson is irrelevant: what matters is whether a reasonable officer, looking at the totality of the circumstances, would have believed Henderson probably committed an offense. *See United States v. Howard*, 883 F.3d 703, 707. ("Probable cause does not require an actual showing of criminal activity, or even that the existence of criminal activity is more likely true than not; instead, probable cause merely requires that a probability or substantial chance of criminal activity exists.") Here, Six Sr. swore out a criminal complaint that Henderson assaulted him and, in Plaintiffs' own version of the story, told Six Jr. the same. In deciding to arrest someone for conduct he did not witness himself, a police officer may rely on information provided by the victim or an eyewitness that the officer reasonably believes is telling the truth. *Pasiewicz v. Lake Cty. Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001). Any reasonable jury would find that a reasonable officer, faced with an account of an assault made by an apparent victim, would have probable cause to place the alleged assailant under arrest.

Whether Six Sr. was actually lying about the assault does not matter because there is no evidence that Six Jr. or the arresting officers, Kamien and Otten, believed Six Sr. was lying. While Hoffman and Heneghan may not have found Six Sr. credible when they met him, Six Jr. heard Six Sr.'s version of events at a different point in time. Plaintiffs provide no evidence to suggest Six Sr. repeatedly changed the story he told his son (as he did with Hoffman and Heneghan), and Six Sr. swore out a criminal complaint against Henderson in writing and under

oath. The issue before this Court is whether there was probable cause to arrest Henderson for aggravated battery, not whether Henderson actually committed the battery. Against this backdrop, no reasonable juror could find, given the totality of the circumstances known to Six Jr. at the time, that it was unreasonable for him to have believed that Henderson assaulted Six Sr.[6]

The Court therefore grants summary judgment with respect to the false arrest claim in favor of Defendants Six Jr. and McCarthy.

## II. Due Process Deprivation of Liberty and Property

Although somewhat unclear, in Count II, Hoffman appears to be claiming that Defendant Scott violated the Due Process Clause of the Fourteenth Amendment in two ways: first, Scott deprived him of the occupational liberty to pursue his calling as a police officer, and second, Scott deprived Hoffman of his property right in his position.

The Court first turns to Hoffman's occupational liberty claim. The right to occupational liberty has long been recognized as protected by the Due Process Clause of the Fourteenth Amendment. *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992) (noting that "[t]he concept of liberty protected by the due process clause has long included occupational liberty—the liberty to follow a trade, profession, or other calling") (internal quotation omitted). However, "[i]t is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Id*. That is, "the employee's good name, reputation, honor or integrity must be called into question in such a manner that makes it virtually impossible for the employee to find new employment in his chosen field." *Townsend v. Vallas*, 256 F.3d 662, 670 (7th Cir. 2001).

---

[6] The existence of probable cause also dooms Six Sr.'s false arrest claim against McCarthy, in addition to and apart from the lack of McCarthy's personal involvement in the arrest.

Viewed in the light most favorable to him, Hoffman suggests he has a protected liberty interest in his employment as a Chicago police officer and that Scott interfered with that interest by (1) separating him from his partner, (2) assigning him to work at a school instead of on the streets, and (3) not attempting to prevent his three-day suspension without pay. (PSOAMF ¶¶ 23–26.) But while these actions may have made Hoffman's time at work less pleasant for him, at no point does Hoffman claim or present evidence that he was fired or otherwise prevented from pursuing the occupation of a police officer. Performing certain tasks within your job or working with certain individuals does not equate to a protected liberty interest in a given occupation. *See Bigby v. City of Chicago*, 766 F.2d 1053, 1057 (7th Cir. 1985) ("[A] particular rank in the police force is not an occupation.") Here, Hoffman has presented no evidence to suggest he was unable to actually work in his chosen occupation as a police officer. Because he cannot show that Scott interfered with his occupational liberty interest, Hoffman cannot succeed on this argument for a violation of his due process rights.

The Court next addresses Hoffman's argument that Scott violated Hoffman's property interest in his employment. In any due process case where the deprivation of property is at issue, "the threshold question is whether a property interest actually exists." *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993). "[A] property interest is not constitutionally cognizable unless a person has a legitimate claim of entitlement to the benefit." *Id*. at 1202 (internal citation omitted). In the employment context, property interests in a position only exist when an employer's discretion is "clearly limited so that the employee cannot be denied employment unless specific conditions are met." *Colburn v. Trustees of Indian Univ.*, 973 F.2d 581, 589 (7th Cir. 1992).

Here, Hoffman has done nothing to delineate the source of his claimed property interest in his employment. Without a cognizable property interest to evaluate, the Court cannot find that Hoffman has a legitimate claim of entitlement to his position. *See Licari v. City of Chicago*, 298 F.3d 664, 668, 668 n.4 (7th Cir. 2002) (failing to specifically allege a property interest dooms a claim for a due process violation). Moreover, even if Hoffman had articulated the basis for a protected property interest, it is undisputed that he did, in fact, receive process in the form of a disciplinary hearing. While the outcome of the hearing was not in his favor, Hoffman's suspension came only after he had received that process. (PRSOMF ¶¶ 39–45.) In fact, Hoffman admits that he was able to request the disciplinary screening and present his side of the story. (*Id*. ¶¶ 42–43.) He does not explain why the process he received was in any way insufficient.

In sum, while Hoffman argues in big, bold strokes that Scott abused his power to deprive Hoffman of property rights in his employment position, he offers no argument, legal authority, or evidence as to what the property interest in his position was, what the source of that interest was, what process he thought he was due, whether he received the process he believed was due to him, or why the process he received was not sufficient. Hoffman has therefore provided no basis for the Court to find any violation of his due process rights under the Fourteenth Amendment. The Court therefore grants summary judgment for Scott with respect to Count II.

### III. Malicious Prosecution

In Count V, Plaintiffs assert a malicious prosecution claim against Defendants McCarthy, Scott, and Six Jr. but do not specify whether they intend to bring this claim under federal or state law. While Plaintiffs do not appear to dispute Defendants' contention that the claim was brought pursuant to Illinois state law, the Second Amended Complaint purports to bring all counts as

violations of federal law. Out of an abundance of caution, the Court will address both the potential federal and state law bases for the malicious prosecution claim.

Turning first to any potential claim for malicious prosecution under state law, any such claim is barred by the statute of limitations. Section 8-101(a) of the Illinois Local Government and Governmental Employees Tort Immunity Act provides that "[n]o civil action ... may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a); *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) ("Illinois local governmental entities and their employees ... benefit from a one-year statute of limitations for 'civil actions' against them.") In Illinois, a cause of action for malicious prosecution accrues when the criminal proceeding on which it is based has been terminated in the plaintiff's favor. *Ferguson v. City of Chicago*, 820 N.E.2d 455, 459 (Ill. 2004).

In Henderson's case, the Circuit Court of Cook County entered a finding of not guilty on March 25, 2014. (DSOMF, Ex. M, Disposition Sheet at 3, Dkt. No. 102.) Henderson therefore had until March 25, 2015 to file a complaint alleging a malicious prosecution claim. Instead, Henderson filed a motion for leave to file an amended complaint on April 30, 2015, filed his Amended Complaint on September 30, 2015, and finally filed his Second Amended Complaint on July 27, 2017. Henderson does not dispute that he failed to assert a malicious prosecution claim before April 30, 2015.[7] (PRSOMF ¶ 56.) Nor does Henderson contest that his claims accrued, at the latest, on April 25, 2015. As such, he has effectively conceded that his state law malicious prosecution claim is barred by the statute of limitations. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d

---

[7] While Plaintiffs filed a different motion for leave to file an amended complaint on March 26, 2015, that proposed complaint only purported to add new defendants and did not include a count of malicious prosecution against any defendant. (Pls.' First Mot. for leave to file Am. Compl., Dkt. No. 22–1.) After Plaintiffs filed a second motion for leave to amend on April 30, 2015, the Court struck the earlier motion. (Order, Dkt. No. 29.)

461, 466 (7th Cir. 2010) ("Failure to respond to an argument ... results in waiver.") And so the Court finds that Henderson's state law malicious prosecution claim (to the extent he seeks to assert one) is time-barred.

But as the Court noted earlier, Henderson may have intended to bring what he labels as a "malicious prosecution" claim pursuant to federal law. Of course, "[t]here is no such thing as a constitutional right not to be prosecuted without probable cause." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) (internal citation omitted). Thus, the Court understands that the basis for any "malicious prosecution" claim that Henderson might assert would have to lie in the Fourth Amendment and the alleged lack of probable cause for Henderson's pretrial detention. *See Lewis v. City of Chicago*, 914 F.3d 472, 474–76 (7th Cir. 2019) (wrongful pretrial detention may be remedied under § 1983 as a violation of the Fourth Amendment). Henderson could only plausibly bring such a claim against McCarthy; as discussed above, neither Scott nor Six Jr. were involved in the post-arrest detention and prosecution of Henderson. Henderson contends that McCarthy advised the ASA to prosecute Henderson on the charge of aggravated battery despite knowing Hoffman and Heneghan had found no probable cause to arrest Henderson.

But the test for probable cause is an objective one: an officer's subjective belief as to the legal basis for a prosecution is irrelevant. *Graham v. Connor*, 490 U.S. 386, 398 (1989). Here, at the time McCarthy spoke to the ASA about the possibility of charging Henderson, he had a sworn criminal felony complaint from Six Sr. (DSOMF, Ex. G), as well as the accounts of both Six Sr. and Schreck that Henderson had physically attacked Six Sr. (DSOMF, Ex. O.) That Hoffman and Heneghan decided not to arrest Henderson does not mean there was no probable cause for Henderson's arrest and detention. What matters is whether an officer in McCarthy's situation would reasonably have believed he had probable cause to advocate for Henderson's continued

detention and prosecution. Based on the facts adduced in this case, no reasonable jury could find that there was no probable cause for Henderson's arrest and detention. The Court therefore grants summary judgment on the federal unlawful pretrial detention claim (to the extent Henderson seeks to bring one) in favor of the Defendants.

## IV. Conspiracy

Lastly, in Count IV, Plaintiffs assert a conspiracy claim under § 1983 against all Defendants for allegedly conspiring to arrest, detain, and prosecute Henderson despite knowing he had committed no crime. "[C]onspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Rather, "the function of conspiracy doctrine is merely to yoke particular individuals to the specific torts charged in the complaint." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). "To establish § 1983 liability through a conspiracy, a plaintiff must [establish that] (1) a state official and private individual(s) reached an understanding to deprive plaintiff of his constitutional rights; and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Logan v. Wilkins*, 644 F.3d 577, 583 (7th Cir. 2011). A plaintiff must also demonstrate both an agreement among defendants to deprive the plaintiff of those rights and that actual deprivations of those rights occurred in the form of overt acts in furtherance of the agreement. *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988).

As discussed above, the Court has granted summary judgment in favor of the Defendants on all counts in this matter alleging substantive constitutional violations. Since conspiracy is not an independent basis for liability, Henderson cannot bring a § 1983 conspiracy claim against any of the Defendants. The Court therefore grants summary judgment to the Defendants on the conspiracy count as well. And since no claims remain against any of the individual Defendants in

the case, the Court also grants summary judgment in favor of the City with respect to Plaintiffs' claim for indemnification (Count III).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 101.) is granted in its entirety. The Clerk will enter Judgment in favor of Defendants.

ENTERED:

Dated: September 30, 2019

Andrea R. Wood
United States District Judge